IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

KMLLC MEDIA, LLC,                    )
                                     )
     Plaintiff,                      )
                                     )
          v.                         )     1:15cv432(JCC/JFA)
                                     )
TELEMETRY, INC., et al.,             )
                                     )
     Defendants.                     )

**M E M O R A N D U M   O P I N I O N**

This matter is now before the Court on Defendants Telemetry, Inc. and Telemetry, Ltd.'s Motion to Dismiss for lack of personal jurisdiction [Dkt. 18] and Defendants' Motion to Dismiss for failure to state a claim. [Dkt. 19] For the following reasons, the Court grants the motion to dismiss for lack of personal jurisdiction and dismisses the case without prejudice.  Because the Court concludes that it lacks personal jurisdiction over Defendant, a threshold issue, the Court need not address Defendant's alternative arguments for dismissal. *Williams v. Romarm S.A.*, --- F. Supp. 3d ---, No. TDC-14-3124, 2015 WL 4475160, *2 (D. Md. July 20, 2015).

**I. Background**

Plaintiff KMLLC Media, LLC, formerly known as Knowlera Media, LLC ("Plaintiff" or "Knowlera"), is a limited liability

1

corporation organized under the laws of the Commonwealth of Virginia, with its headquarters and principal place of business in Great Falls, Virginia. (Compl. [Dkt. 1] ¶ 5.) Plaintiff produced high-quality video content for distribution over the Internet, and licensed its video content to third-party publishers. (*Id.*) Defendant Telemetry, Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York ("Telemetry US"). (*Id.* at ¶ 6.) Defendant Telemetry, Ltd. is a corporation organized and existing under the laws of the United Kingdom with its principal place of business in London, England ("Telemetry UK") (collectively "Defendants"). (*Id.* at ¶ 7.)

After its inception in 2007, Plaintiff was one of the first companies "to focus on creating professionally-produced, purpose-driven lifestyle video content across a wide variety of categories." (Compl. ¶ 12 ("The founders believed that pairing its original video content with a web destination would create an excellent resource for consumers and advertisers alike.").) In early 2008, Plaintiff launched the website "www.monkeysee.com" -- a fictitious name Plaintiff had done business under that was known by many business entities in the online advertising industry -- and Plaintiff "achieved substantial recognition in the marketplace." (*Id.* at ¶¶ 5, 13.) Plaintiff licensed its video content and video widgets to more

2

than one hundred media companies, including BidMonitor.  (*Id.* at ¶ 34.)  Plaintiff also owned several Internet domain names that incorporate the "MonkeySee" brand, which were licensed to BidMonitor for use and operation.  (*Id.*)

On June 30, 2014, Defendants published a report regarding Plaintiff's involvement in a fraudulent Internet video advertising scheme (the "Report").  (Compl. ¶¶ 18-19, Ex. A [Dkt. 1-1].)  Defendants disseminated the Report "to multiple third parties, including without limitation, news media and trade publications, with the knowledge and intent that the contents of the Report would be widely published and disseminated" over the Internet and in interstate commerce throughout the United States.  (*Id.* at ¶¶ 20-21.)  The Report was also disseminated to Plaintiff's "customers, potential customers, licensees, vendors, suppliers, peers, colleagues" and other important industry individuals.  (*Id.* at ¶ 20.)  Defendants did this as a "promotional and advertising effort[] to solicit new clients, including current and potential advertisers doing business with Knowlera . . . ."  (*Id.* at ¶ 21.)

Defendants provided a copy of the Report to media outlets, including AdAge, a widely-read media source covering the online advertising industry.  (*Id.* at ¶ 26.)  AdAge published an article about the Report, entitled "Ad-Fraud

3

Operation Fools Detection Companies, Nets Millions," which was viewed and read by millions of readers worldwide, including readers in the Commonwealth of Virginia. (*Id.* at ¶ 26, Ex. B. [Dkt. 1-2].)  The Report, and consequently, AdAge's article, allegedly published "blatantly false and defamatory statements of and concerning Plaintiff Knowlera." (*Id.* at ¶ 27.)  In the Complaint, Plaintiff identifies fifteen statements as false and defamatory. (*Id.* at ¶ 29.)  These statements were allegedly false and defamatory because "they directly state or strongly imply that Knowlera has committed and engaged in a pattern of fraudulent, unethical, deceptive, dishonest, and possibly criminal acts . . . ." (*Id.* at ¶ 30.)  Specifically, Defendants are alleged to have defamed Plaintiff by stating or implying that Plaintiff intentionally defrauded advertisers, engaged in a conspiracy to systemically defraud advertisers, and created a sophisticated system of online fraud to deceive advertisers by inflating the number of impressions and reaping millions of dollars in revenues for advertisements that were never actually seen or viewed by any individuals. (*Id.*)

According to the Report, "it appears possible that a company named BidMonitor, a third-party licensee of Knowlera's video content and certain domains, might have engaged in the improper conduct alleged [above] and might have used its relationship with Knowlera as a means to perpetrate these acts,

4

in violation of its agreement with Knowlera." (Compl. ¶ 33.)
On July 2, 2014, Plaintiff's counsel contacted Defendants and
advised them of the false nature of the Report. (*Id.* at ¶ 39,
Ex. C [Dkt. 1-3].) Plaintiff also made multiple telephone
calls, but claim that Defendants have never responded to the
attempted contact. (*Id.*) Accordingly, Plaintiff filed the
instant suit against Defendants alleging three counts: (1)
defamation by Telemetry US; (2) defamation by Telemetry UK; and
(3) violation of the Lanham Act, 15 U.S.C. § 1125(a), by all
Defendants. (*Id.* at ¶¶ 49-62.) Plaintiff seeks compensatory
and punitive damages, equitable relief, and fees. (*Id.* at 21.)

In response to the Complaint, Defendants filed a
motion to dismiss for lack of personal jurisdiction pursuant to
Rule 12(b)(2) and a motion to dismiss for failure to state a
claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure with a memorandum in support [Dkt. 20]. In support of
their motion to dismiss for lack of personal jurisdiction,
foreign corporations Telemetry US and Telemetry UK argue that
they are not "at home" in Virginia and that Plaintiff's claims
do not arise out of any of Defendants' activities in Virginia.
(Defs.' Mem. at 8-15.)[1] Knowlera filed an opposition to the
motions [Dkt. 22], to which Defendants replied [Dkt. 23]. The

---

[1] For citation purposes, the Court uses the pagination assigned
by CM/ECF in the parties' briefs.

Court heard oral argument of counsel on June 25, 2015.  The
Court ordered limited jurisdictional discovery on June 25, 2015.
[Dkt. 25]  Discovery was completed and the Court heard
supplemental oral argument of counsel on October 15, 2015.
Accordingly, the motions are ripe for disposition.

## II. Legal Standard

A defendant can raise lack of personal jurisdiction as
a defense in a pre-answer motion.  *See* Fed. R. Civ. P. 12(b)(2).
The plaintiff bears the burden of proving to the court the
existence of personal jurisdiction over the defendant by a
preponderance of the evidence.  *New Wellington Fin. Corp. v.
Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005)
(citation omitted).  If there are disputed factual questions as
to the existence of jurisdiction, the court may hold a separate
evidentiary hearing, or may defer ruling pending the production
of relevant evidence at trial.  *See Combs v. Baker*, 886 F.2d
673, 676 (4th Cir. 1989); *see also Long v. Chevron Corp.*, No.
4:11cv47, 2011 WL 3903066, at *3 (E.D. Va. Sept. 2, 2011).  This
motion comes before the court after a period of jurisdictional
discovery, and "[w]hen the parties, as here, have conducted
jurisdictional discovery, it is the plaintiff's burden to
establish personal jurisdiction by a preponderance of the
evidence."  *Bright Imperial Ltd. v. RT Mediasolutions, S.R.O.*,
No. 11-cv-935, 2012 U.S. Dist. LEXIS 70000, at *9(E.D. Va. May

18, 2012)(citing *Combs v. Baker*, 866 F.2d 673, 676 (4th Cir. 1989)).

### III. Analysis

Federal courts exercise personal jurisdiction in the manner provided by state law. *New Wellington*, 416 F.3d at 294. The determination of whether the Court can assert personal jurisdiction over a nonresident defendant involves two steps: (1) whether the state's long arm statute authorizes the exercise of jurisdiction; and (2) if so, whether the exercise of jurisdiction comports with due process requirements under the Fourteenth Amendment. *People Exp. Airlines, Inc. v. 200 Kelsey Assocs., LLC*, 922 F. Supp. 2d 536, 542 (E.D. Va. 2013) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003)). In Virginia, "[i]t is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 562 (Va. 1999). Because Virginia's long arm statute is intended to extend personal jurisdiction to the outer limits of due process, the constitutional and statutory inquiries merge. *Id.; see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

There are two types of personal jurisdiction that meet the requirements of due process: specific and general. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985); *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). In both instances, a nonresident defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Since the Supreme Court's "canonical opinion in [*International Shoe*] . . . specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction has played a reduced role." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55 (2014) ("[S]pecific jurisdiction will come into sharper relief and form a considerably more significant part of the scene.") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011)). Regardless, general and specific jurisdiction each satisfies the constitutional requirements of due process, and each is discussed in turn.

Ultimately, the Court finds that it cannot assert personal jurisdiction over Defendants under a theory of general jurisdiction. Specific jurisdiction is a much closer question, but ultimately Plaintiff fails to establish by a preponderance of the evidence that Defendants are subject to specific personal

jurisdiction in Virginia.  Accordingly, the Court grants
Defendants' motion and dismisses the case for lack of personal
jurisdiction.

## A. General Jurisdiction

"When a State exercises personal jurisdiction over a
defendant in a suit not arising out of or related to the
defendant's contacts with the forum, the State has been said to
be exercising 'general jurisdiction' over the defendant."
*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,
414 n.9 (1984) (citation omitted).  "[O]nly a limited set of
affiliations with a forum will render a defendant amendable to
all-purpose [or general] jurisdiction there."  *Daimler*, 134 S.
Ct. at 760.  A defendant must have "continuous and systematic"
affiliations with the State "as to render [it] essentially at
home in the forum State."  *Goodyear*, 131 S. Ct. at 2851 (citing
*International Shoe*, 326 U.S. at 317).  Absent exceptional
circumstances, the defendant is only subject to the general
jurisdiction of the forum state if it is the defendant's
domicile.  *Daimler*, 134 S. Ct. at 760 ("[T]he paradigm forum for
the exercise of general jurisdiction is the individual's
domicile; for a corporation, it is an equivalent place, one in
which the corporation is fairly regarded as at home.") (quoting
*Goodyear*, 131 S. Ct. at 2853-54 (citing Brilmayer et al., A
General Look at General Jurisdiction, 66 Texas L. Rev. 721, 728

(1988)); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (stating general jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.,* domicile).").  Thus, for the Court to assert general jurisdiction, the defendant must have continuous and systemic contacts with the forum state so as to not offend due process requirements. *Goodyear*, 131 S. Ct. at 2851.

Here, it is undisputed that Telemetry US is domiciled in New York, and that Telemetry UK is domiciled in London, England; both locations are the place of incorporation and principal place of business for each corporation.  (Defs.' Mem. Ex. 1 [Dkt. 20-1] Carncross Decl. ¶ 2, Ex. 2 [Dkt. 20-2] Frith Decl. ¶ 2.)  Neither Telemetry US nor Telemetry UK is registered to transact business in the Commonwealth of Virginia. (Carncross Decl. ¶ 3; Frith Decl. ¶ 3.)  Telemetry US and Telemetry UK do not have offices, officers, employees, or agents in Virginia.  (Carncross Decl. ¶ 4; Frith Decl. ¶ 4.)  Telemetry US and Telemetry UK do not own or rent property in Virginia, nor do they pay taxes in Virginia or maintain bank accounts there. (Carncross Decl. ¶ 5; Frith Decl. ¶ 5.)  In the face of these undisputed facts, Plaintiff nonetheless asserts the Court has general jurisdiction over Defendants due to their "continuous and systematic" contacts in Virginia by "regularly contracting

10

with and performing services for Virginia-based companies and
companies with substantial offices in Virginia." (Pl.'s Opp'n
at 3.) Specifically, Plaintiff argues that general jurisdiction
over Defendants is proper because four "current and former
account managers [oversaw] the Mars, Inc. account for Telemetry"
and because Telemetry UK filed eight patent applications with
the U.S. Patent and Trademark Office located in Alexandria,
Virginia. (*Id.* at 4.) These allegations are insufficient "as
to render [Defendants] essentially at home in [Virginia]."
*Goodyear*, 131 S. Ct. at 2851 (citing *International Shoe*, 326
U.S. at 317). Therefore, general jurisdiction is improper here.

General jurisdiction has long been understood as
proper only in "instances in which the continuous corporate
operations within a state [are] so substantial and of such a
nature as to justify suit against it on causes of action arising
from dealings entirely distinct from those activities."
*Goodyear*, 131 S. Ct. at 2853 (quoting *International Shoe*, 326
U.S. at 318). The Supreme Court has recently clarified that
"only a limited set of affiliations with a forum will render a
defendant amenable to all-purpose jurisdiction there." *Daimler*,
134 S. Ct. at 760. Thus, "the paradigm forum for the exercise
of general jurisdiction . . . for a corporation . . . is an
equivalent place [to the individual's domicile], one in which
the corporation is fairly regarded as at home." *Goodyear*, 131

S. Ct. at 2853-54 (citation omitted).  This comports with the

Supreme Court's recognition of the relatively recent trend in

the extirpation of asserting personal jurisdiction on the basis

of general jurisdiction in favor of specific jurisdiction.  *See,*

*e.g.*, *Daimler*, 134 S. Ct. at 758 ("As this Court has

increasingly trained on the 'relationship among the defendant,

the forum, and the litigation,' *i.e.*, specific jurisdiction,

general jurisdiction has come to occupy a less dominant place in

the contemporary scheme.") (citation and footnotes omitted);

*Goodyear*, 131 S. Ct. at 2854 (citing Twitchell, The Myth of

General Jurisdiction, 101 Harv. L. Rev. 610, 628 (1988) (in the

wake of *International Shoe*, "specific jurisdiction has become

the centerpiece of modern jurisdiction theory, while general

jurisdiction plays a reduced role.")).

Here, it is untenable to claim that Defendants are "at

home" or domiciled in Virginia.  In short, Telemetry US is

domiciled in New York and Telemetry UK is domiciled in England.

And even if the Court assumes[2] that various Telemetry employees

---

[2] The Court finds that general jurisdiction is improper even if
it assumes that Telemetry employees serviced accounts for a
corporation in Virginia, when it appears that this assertion is
questionable as a matter of fact.  (*See* Defs.' Reply Ex. 1 Frith
Decl. II [Dkt. 23-1] ¶¶ 3-10 ("Mars, Inc. is not, and has not
been, a client of Telemetry US or Telemetry [UK] . . . .
[Various Mars Affiliates] were previously clients of Telemetry
US . . . . None of the work performed by Telemetry US and/or
Telemetry UK on the Mars Affiliates' account was performed in
Virginia, and none of the individuals that Telemetry US and/or

previously managed accounts for a Virginia corporation, this does not constitute "continuous corporate operations within a state [that are] so substantial and of such a nature as to justify suit against it" under a theory of general jurisdiction. *Goodyear*, 131 S. Ct. at 2853 (quoting *International Shoe*, 326 U.S. at 318). Similarly, Plaintiff does not cite, and this Court cannot find, any legal support for the proposition that the filing of a patent application with the U.S. Patent and Trademark Office in Alexandria, Virginia constitutes a proper basis for general jurisdiction. Indeed, such a holding would necessarily subject *any* patent or trademark applicant to the general jurisdiction of this Court, even if it had no other connection to Virginia. The due process clause does not allow such an unreasonable result.

Fundamentally, the requisite "continuous and systematic" affiliation with the forum state is "comparable to a domestic enterprise in that State." *Daimler*, 134 S. Ct. at 758 n.11. The facts regarding Defendants' business operations fall far short of this lofty standard. Accordingly, the Court cannot assert personal jurisdiction over Defendants under a theory of general jurisdiction.

## B. Specific Jurisdiction

---

Telemetry UK dealt with at the Mars Affiliates was located in Virginia.").)

Asserting personal jurisdiction over Defendants under a theory of specific jurisdiction would also be inappropriate in this case.  To determine whether the Court can assert specific jurisdiction over the defendant, the Court asks: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'"  *Carefirst of Maryland, Inc.*, 334 F.3d at 397 (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)); *see also Intercarrier Commc'ns LLC v. WhatsApp Inc.*, No. 3:12-cv-776-JAG, 2013 WL 5230631, at *3 (E.D. Va. Sept. 13, 2013).  Ultimately, Plaintiff cannot point to evidence of actions by Defendants which were purposefully directed towards Virginia and gave rise to Plaintiff's claims.  The evidence put forward by Plaintiff shows only activities which were either directed at other states and gave rise to their cause of action, or directed at Virginia but did not give rise to Plaintiff's cause of action. Defendants' contacts with Virginia are therefore not of the quality or quantity which would support the exercise of personal jurisdiction in this action.

14

Plaintiff argues that Defendants have subjected themselves to specific personal jurisdiction in several ways. Plaintiff repeats its contention that Defendants' dissemination of its Report on Knowlera to AdAge and several of Defendants' clients evidences a desire to harm Knowlera and that these allegedly intentional harms to Telemetry, "in the estimation of Virginia companies and residents plainly connects Telemetry's conduct to Virginia." (Pl.'s Supp. Opp'n [Dkt. 51] at 14.) Plaintiff also argues that discovery has uncovered four ways in which Defendants have purposely directed harmful business activities towards Virginia, giving rise to Plaintiff's cause of action.  First, Plaintiff argues that Defendants are subject to personal jurisdiction here because they contacted Knowlera online and by phone while "conducting their investigation to gather information for the Report." (Pl.'s Supp. Opp'n At 9, Ex. 14 [Dkt. 51-14].).  Second, Plaintiff points to Defendants' email of the Report to "Trace Rutland, the North America Media Buying Director at Mars, Inc. … [which] has its principal place of business in McLean, Virginia" as evidence of purposeful activity directed towards Virginia.  (*Id.* at 10, Ex. 6 [Dkt. 51-6], 7 [Dkt. 51-7], 9 [Dkt. 51-9], 10 [Dkt. 51-10], and 11 [Dkt. 51-11].) Third, Plaintiff makes the same argument about Defendants' use of the AdGen article in an email to "Julie Fleisher, Kraft's Senior Director of Data, Content, and Media,

in an effort to schedule a marketing meeting and explore ways 'to collaborate together.'" (*Id.* at 11, Ex. 12 [Dkt. 51-12] 13 [Dkt. 51-13].)  Fourth and finally, Plaintiff argues for specific personal jurisdiction arising from Defendants' use of the report in a March 26, 2015 acquisition pitch to the Virginia corporation ComScore.  (*Id.*, Ex. 2 [Dkt. 51-2], 5 [Dkt. 51-5], 22 [Dkt. 51-22], 23 [Dkt. 51-23].)  The Court will deal with each of Plaintiff's arguments in turn, but ultimately none of its proposed theories of specific jurisdiction are persuasive.

The Court first addresses Plaintiff's argument that Defendants are subject to personal jurisdiction in Virginia because they "knew their Report and the Article would cause harm to Knowlera in Virginia [because Knowlera is located in Virginia]– but simply did not care." (Pl.'s Supp. Opp'n at 12). The specific jurisdiction inquiry has always focused on "the relationship among the defendant, the forum, and the litigation."  *Walden*, 134 S. Ct. at 1121 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.") (citations omitted).  Even though the plaintiff has the burden of proving personal jurisdiction, the specific jurisdiction analysis is defendant-centric.  *See Walden*, 134 S. Ct. at 1122, 1125 ("But the plaintiff cannot be the only link between the defendant and the

16

forum . . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Asserting personal jurisdiction over Defendants under a theory of specific jurisdiction simply because Defendant is alleged to have intentionally harmed the Plaintiff, and the Plaintiff is at home in the forum state would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 1125. Plaintiff's efforts to establish the sufficient minimum contacts necessary between Defendants and Virginia are fruitless in the face of the Supreme Court's precedent in *Walden.*

Plaintiff contends that this Court has personal jurisdiction over Defendants because:

> (1) Defendants knowingly and intentionally targeted the Plaintiff when the Defendants published and disseminated the false and defamatory statements, of and concerning Plaintiff, specifically naming the Plaintiff in Defendants' defamatory Report annexed hereto, with the intent to cause harm and damage to Plaintiff's reputation in the Commonwealth of Virginia;
>
> (2) Defendants, upon information and belief, knowingly and intentionally published the false and defamatory statements within the Commonwealth of Virginia, resulting in harm and damage to Plaintiff within the Commonwealth of Virginia; and
>
> (3) Defendants knowingly and intentionally published the false and defamatory

17

> statements outside the Commonwealth of
> Virginia, with the knowledge and intent that
> the statements would result in harm and
> damage to Plaintiff within the Commonwealth
> of Virginia.

(Compl. ¶ 9.)  "Such reasoning improperly attributes a
plaintiff's forum connections to the defendant and makes those
connections 'decisive' in the jurisdictional analysis." *Walden*,
134 S. Ct. at 1125.  The Supreme Court's decision in *Walden*
controls this outcome and the Court's analysis.

In *Walden*, The Supreme Court emphasized that the
specific jurisdiction inquiry focuses "on the relationship among
the defendant, the forum, and the litigation," and that there, a
DEA agent located in Georgia lacked the "minimum contacts" with
Nevada that are a prerequisite to the exercise of jurisdiction
over him because no part of his conduct occurred in Nevada, he
formed no jurisdictionally relevant contacts in Nevada, and the
mere injury to a forum resident was not a sufficient connection
to the forum.  *Id.,* at 1121-26 (citations omitted).  Here, just
as in *Walden*, Plaintiff's argument is focused on the alleged
harm that it suffered as a result of Defendants' alleged
defamatory act.  (*See* Pl.'s Opp'n at 8 ("Knowlera, a company
that was located and injured in Virginia, should not have to go
to New York and/or the United Kingdom to seek redress from
companies that knowingly caused them injury in Virginia.").)
This is not the proper focus of the Court's jurisdictional

18

inquiry. *See Walden*, 134 S. Ct. at 1125 ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant *only insofar as it shows that the defendant has formed a contact with the forum State.*") (emphasis added). Because Defendants have not formed substantial contacts with the Commonwealth of Virginia, the Court cannot assert personal jurisdiction over them on this basis.

In arguing that Defendants should be subject to specific jurisdiction for their disclosure of the Report to AdAge, who then subsequently disseminated their resulting Article to Virginia readers, Plaintiff relies heavily on the Supreme Court's decision in *Calder v. Jones*,[3] but the facts of this case are distinguishable. In *Calder*, the plaintiff brought libel claims in California state court against a reporter and editor who worked for the National Enquirer at its headquarters in Florida. 465 U.S. 783 (1984). The claims were brought based on an article written in Florida and published nationally, with a California circulation of roughly 600,000. The Supreme Court held that the California state court could properly assert personal jurisdiction over the defendants after "examin[ing] the

---

[3] Plaintiff also relies on the three-factor test from *ALS Scan*, which is discussed, *supra*.

various contacts the defendants had created with California (and not just with the plaintiff) by writing the allegedly libelous story." *Walden*, 134 S. Ct. at 1123 (discussing *Calder*).

Specifically, the Court found the Florida defendants had created "ample" contacts with *the forum state of California*.

> The defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the "brunt" of that injury was suffered by the plaintiff in that State.

*Walden*, 134 S. Ct. at 1123 (citing *Calder*, 465 U.S. at 788-89 ("In sum, California [wa]s the focal point of both the story and the harm suffered.")).  The Supreme Court's recent analysis in *Walden*, which greatly considered and relied on its precedent from *Calder*, counsels against asserting jurisdiction over Defendants here.

First, Defendants' suit-related conduct, *i.e.* the creation and publication of the Report, did not "arise out of contacts that the defendant [itself] create[d] with the forum State." *Walden*, 134 S. Ct. at 1121-22.  First, there is no allegation or evidence that the Report was created in Virginia. The Court draws this conclusion based on the undisputed fact that Defendants do not have employees, offices, or agents located in Virginia.  It is more likely, although still

20

speculative, that the Report was created in New York or London, the domiciles of each corporation.  Second, as discussed above, Defendants did not directly distribute the Report to any individual in the Commonwealth of Virginia.  (Carncross Decl. ¶ 8; Frith Decl. ¶ 8.)

Instead, Plaintiff argues that Defendants distributed the Report to AdAge, "a media entity focused on the advertising industry," that subsequently wrote an article about the Report that was posted to its website, which is accessible by anyone with an Internet connection.  (Jerro Decl. ¶¶ 9-11.)  AdAge is "a widely read publication in the Northern Virginia area." (*Id.* at ¶ 9.)  "[H]undreds if not thousands of people in the Northern Virginia area read AdAge's Article," including representatives from AOL, Gannett, and comScore.  (*Id.* at ¶¶ 14-16.)  But it remains undisputed that Telemetry US and Telemetry UK, the named Defendants in this action, did not directly distribute or publish the Report within the Commonwealth of Virginia.  (Carncross Decl. ¶ 8; Frith Decl. ¶ 8.)  The fact that AdAge, a non-party, posted an article on its website regarding the Report does not somehow draw the named Defendants within the personal jurisdiction of this Court.

Under the first prong of *Walden*, the Court looks only at contacts "the defendant *himself* creates with the forum State." *Walden*, 134 S. Ct. at 1122 (quotation marks omitted).

Here, quite simply, there are none, except for the fact that Defendants authored the Report about Plaintiff, a Virginia-based company. "[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Thus, Defendants' actions here, in light of *Walden*, counsel against this Court asserting personal jurisdiction over Defendants under a theory of specific jurisdiction.

Second, Defendants have minimal contacts with Virginia, the forum state itself. *See Walden*, 134 S. Ct. at 1122("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). In short, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* And here, Plaintiff is Defendants' only relevant link to Virginia. Defendants wrote the Report, but there is no evidence that Defendants circulated the Report in Virginia to "deliberately exploi[t]" the market in Virginia or Plaintiff's business in Virginia. *Cf. id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)). Instead, Defendants distributed the Report to AdAge, an Internet-based advertising magazine that wrote its own article about the Report and

22

published it on its website,[4] which was then read by advertising

executives in Virginia.  This causal chain is too attenuated to

support the exercise of specific jurisdiction in this case

without violating Defendants' due process rights.  *See Walden*,

134 S. Ct. at 1123 ("Due process requires that a defendant be

haled into court in a forum State based on *his own affiliation*

*with the State*, not based on the 'random, fortuitous, or

attenuated' contacts he makes by interacting with other person

affiliated with the State.") (quoting *Burger King*, 471 U.S. at

475).

Plaintiff is correct that if its allegations are true,

the injury to Plaintiff's reputation occurred in the

Commonwealth of Virginia; most notably, in the eyes of its

clients and the online-advertising industry of the forum State.

But that connection alone is not enough to assert personal

jurisdiction over Defendants.  Unlike *Calder*, the Report at

issue did not "have a Virginia focus."  *See Walden* 134 S. Ct. at

1124 ("[T]he injury to the plaintiff's reputation in the

estimation of the California public . . . *combined with* the

various facts that gave the article a California focus, sufficed

---

[4] The Supreme Court has not yet answered the question regarding
"virtual contacts."  *See Walden*, 134 S. Ct. at 1125 n.9 ("[W]e
reiterate that the 'minimum contacts' inquiry principally
protects the liberty of the nonresident defendant, not the
interests of the plaintiff.") (citations omitted).  To the
extent the Fourth Circuit addressed this issue in *ALS Scan,* it
is discussed, *infra*.

to authorize the California court's exercise of jurisdiction."). Aside from identifying Plaintiff's location in Great Falls, Virginia (*see* Compl. Ex. A at 3), the Report focused on "a ghosting vehicle and its ability to convert one purchased low level in banner online video advertising impression into multiple saleable pre-roll impressions with faked results" using highly technical, market-focused jargon.  (Compl. Ex. A.) Stated differently, Plaintiff "would have experienced [the same harm] wherever else they might have [been headquartered] and found themselves [answering to clients]" who read the article. *Walden*, 134 S. Ct. at 1125.  There is simply no focus on Virginia.  *Id.* ("Unlike the broad publication of the forum-focused story in *Calder*, the effects of [Defendants'] conduct on [Plaintiff is] not connected to the forum State in a way that makes those effects a proper basis for jurisdiction.").

Presumably, if the Report was intended for outside consumption, it targeted the entire online advertising industry; an industry that spans the Internet, not just Northern Virginia (or wherever Plaintiff was domiciled).  The Report itself gives no indication that it was targeted specifically for online advertising agencies in Virginia, or Virginia companies doing business with Plaintiff, or any companies doing business with Plaintiff.  The "crux" of the Supreme Court's jurisprudence in this area remains "focused on the relationship among the

24

defendant, the forum, and the litigation," and whether "the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 132 S. Ct. at 1123, 1125 (citations and internal alterations omitted).  Because the Defendants have not created a meaningful connection with Virginia, the Court cannot assert personal jurisdiction over them under a theory of specific jurisdiction either.  *Id.* at 1125 (stating the defendant's knowledge of a plaintiff's strong ties to the forum state is irrelevant, because such an approach "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis.").

Next, the Court addresses Plaintiff's claim that Defendants are subject to specific personal jurisdiction because jurisdictional discovery has shown that Defendants reached out to Virginia to contact Plaintiff while they were compiling their report.  (Pl.'s Supp. Opp'n at 9, Ex. 14.) Specifically, Plaintiff alleges that while Defendants were "conducting their investigation to gather information for the Report, and subsequently for the Article, Defendants deceptively registered to become a Knowlera user, engaged in various email communications with Knowlera, and spoke to Knowlera on the phone." (*Id.*)  Further, Plaintiff alleges that "Knowlera and Defendants (using a pseudonym) did business together, as Defendants used Knowlera's services in April 2014 and June

25

2014." (*Id.*, Ex. 16.)  Defendants admit that they have made one phone call and sent one email to Knowlera "in connection with the investigation that led to the Report." (Defs.' Supp. Mem. [Dkt. 48] at 14 (*citing* Carncross Decl. [Dkt. 20-1] ¶ 7).) Plaintiff's Exhibit 14 confirms that Defendants did register an account with Knowlera in June, 2014 under the fictitious name "greatcookinginfo".  (Pl.'s Supp. Opp'n at 9, Ex. 14.) Exhibit 16 likewise confirms that this account used some of Knowlera's services.  (*Id.,* Ex. 16.)  However, these alleged contacts are minimal in quantity, and are not of the quality which would justify subjecting Defendants to specific jurisdiction for this claim on their account.

The Fourth Circuit directly addressed the question of specific jurisdiction allegedly stemming from electronic contacts with the forum state in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002), which modified the "traditional test" from *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) to account for advancements in technology.  A Court may "exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the

State's courts." *ALS Scan*, 293 F.3d at 714.  Here, Defendants'
contact with Knowlera in the course of their investigation is
electronic activity directed into Virginia with the manifested
intent of engaging in (extremely limited) business within the
State, but *these* activities have not created Plaintiff's cause
of action in this case.  Plaintiff's claims stem from the
alleged dissemination and publication of Defendants report, not
the mere fact of the Report's existence.  (*See* Compl. ¶¶ 49-62).
Additionally, the registration of a dummy web-site, one e-mail,
one phone call, and a cursory sampling of Plaintiff's services
for investigative purposes are not very substantive contacts.
Accordingly, the Court will give them little weight in
determining whether the Defendant has made sufficient voluntary
contacts in Virginia to allow the Court to exercise specific
personal jurisdiction over them.  *See DeCusati v. Reiss Eng'g,
Inc.*, No. 15-cv-0204, 2015 U.S. Dist. LEXIS 998344, at *5 (E.D.
Va. July 30, 2015)("Telephone calls, email and telex messages,
and letters do not form a basis for personal
jurisdiction.")(citing *DeSantis v. Hafnet Creations,* 949 F.
Supp. 419, 424 at n.12 (E.D.Va. 1996)); *See also Koch v. Local
438, United Autoworkers Union,* 54 F. App'x 807 (6th Cir.
2002)(Holding that telephone calls by the plaintiff to the
defendant in the forum state and a subsequent letter to a third
party in another state were not a sufficient basis for personal

jurisdiction.).[5]  As the contacts between Defendants and Plaintiff arising from Defendants' investigation are both cursory in quality and did not give rise to Plaintiff's cause of action, they are not sufficient to support an exercise of specific jurisdiction by this Court over Defendants.

Plaintiff also argues that Defendants are subject to specific personal jurisdiction here because discovery has shown that Defendants sent the Report and the AdAge Article to two executives employed by two separate Virginia corporations in an attempt to "expand their business relationship" with those corporations.  (Pl.'s Supp. Opp'n at 10-11.)  Defendants, on the other hand, assert that the evidence in the record does not establish that these executives represented Virginia corporations; that Defendants did not believe nor should they reasonably have known that these executives based in New Jersey and Illinois, respectively, were employed by Virginia corporations; and that in any event Defendants had no intention to solicit business in Virginia or spread the Report or the Article to the Commonwealth through its contact with these executives.  (Defs.' Supp. Mem. at 13.)  Ultimately, Plaintiff fails to prove by a preponderance of the evidence that by

---

[5] Plaintiff's offered case of *Alahverdian v. Nemelka*, 2015 WL 5004886 (S.D.Ohio Aug. 24, 2015) is inapposite, as in that case the defendant emailed the damaging communication itself directly to the plaintiff as well as a number of other people within the forum state.

sending the Report and the Article, respectively, to these two executives Defendants have "purposefully availed [themselves] of the privilege of conducting activities in [Virginia]." *Carefirst of Maryland, Inc.*, 334 F.3d at 397 (internal citations omitted).

In order to properly be subject to this Court's specific jurisdiction, "a defendant must 'purposefully avail[] itself of the privilege of conducting activities within the forum state.' . . . The Court cannot hale a defendant into its jurisdiction because of 'random, fortuitous, or attenuated contacts' or some 'unilateral activity of another party or a third person.'" *DeCusati*, 2015 U.S. Dist. LEXIS 99834 at *5 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Here, Plaintiff fails to demonstrate by a preponderance of the evidence that Defendants were "*purposefully availing*" themselves of Virginia's markets by contacting either Trace Rutland or Julie Fleisher. Plaintiff relies on Exhibit 7 to demonstrate that Ms. Rutland was employed at Mars Inc., a Virginia corporation, when Defendants sent her their Report on Knowlera. [Dkt. 51-7]. However, Exhibit 7 itself, Ms. Rutland's "LinkedIn" page, identifies her as working in New Jersey while she was employed by Mars. *Id.* On the basis of this evidence then, It is more likely than not that Defendants would have thought that by emailing Mars' "North American Buying Director" in New Jersey they were reaching out to their former

clients, Mars Chocolate North America, LLC, and its affiliates, none of which are incorporated or headquartered in Virginia. [Dkt. 51-7]; Defs.' Supp. Mem. at 12-13.)  In fact, Plaintiff has not demonstrated that Defendants actually conducted any activities at all in Virginia any point in this interaction or as a result of the emails with Ms. Rutland.  Therefore, Plaintiff has failed to demonstrate by a preponderance of the evidence that Defendants have purposefully availed [themselves] of the privilege of conducting activities in [Virginia]." *Carefirst of Maryland, Inc.*, 334 F.3d at 397 (internal citations omitted).  Accordingly, Defendants' e-mails to Ms. Rutland cannot support an exercise of specific jurisdiction by this Court in this case.

Likewise, Plaintiff fails to prove by a preponderance of the evidence that Defendants had even the slightest thought of Virginia in mind when one of their employees in Chicago forwarded the AdAge article to a Julie Fleisher, Kraft's Senior Director of Data, Content, and Media, also based out of Chicago. (Pl.'s Supp. Opp'n at 11, Ex. 13 [Dkt. 51-13].)  As witn with Ms. Rutland, Plaintiff fails to demonstrate that Defendants have in fact conducted any activities in Virginia either in the course of their interaction with Julie Fleisher or as a result of it.  Therefore, for the same reasons stated above in the discussion of the e-mails with Ms. Rutland, Defendants' email

30

interactions with to Ms. Fleisher cannot support an exercise of specific jurisdiction over Defendants by this Court in this case.

Finally, Plaintiff argues that Defendants are subject to specific jurisdiction because of Defendants' representations in a March 26, 2015 acquisition pitch to the Virginia corporation ComScore regarding their report uncovering Knowlera as perpetrator of an advertisement fraud.  (Pl.'s Supp. Opp'n at 11, Ex. 2, 5, 22, 23.)  This argument fails as Plaintiff's cause of action cannot possibly arise out of the Defendants' representations to ComScore in a March 26, 2015 meeting. (Defs.' Supp. Mem. at 14.)  "When a court is exercising specific jurisdiction over a defendant, arising out of or related to the defendant's contacts with the forum, the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred." *Steel v. United States*, 813 F.2d 1545 (9th Cir. 1987)(citation and internal quotation marks omitted); *see also Stein v. Horwitz*, 1999 U.S. App. LEXIS 21940, at *6 (4th Cir. Sept. 13, 1999)(citing Steel and stating that "[a]s to the due process considerations, we assess [the] contacts with [the forum state] at the time of the accident").  Plaintiff alleges that the losses caused by Defendants' dissemination of the Report occurred in 2014.  (*See* Compl. ¶ 17)("Unfortunately, most of the

value that Knowlera had worked so hard to build over the course
of the last seven years was suddenly wiped out in the summer of
2014 due to Telemetry's false and defamatory Report.")   As
Defendants representations of March 26, 2015, occurred well
after Plaintiff's alleged losses, Plaintiff's claims cannot
plausibly arise from this contact with the forum state.
Therefore, this proposed basis for specific jurisdiction will
fail as well, and the Court accordingly will grant Defedants'
Motion to Dismiss for lack of Personal Jurisdiction.

### IV. Conclusion

For the foregoing reasons, the Court grants
Defendants' motion to dismiss for lack of personal jurisdiction,
rendering moot Defendants' motion to dismiss for failure to
state a claim.   An appropriate Order shall issue.


                              /s/
October 27, 2015              James C. Cacheris
Alexandria, Virginia      UNITED STATES DISTRICT COURT JUDGE